CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 28 2015
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN TATOIAN, | ) |
| Plaintiff, | ) Civil Action No. 7:14-CV-00484 |
| v. | ) **MEMORANDUM OPINION** |
| WILLIAM LEE ANDREWS, III, et al., | ) By: Hon. Glen E. Conrad |
| Defendants. | ) Chief United States District Judge |

In this case, Plaintiff John Tatoian, a Connecticut citizen, alleges that Defendant Richard Schulenberg, a California citizen, participated in a scheme to defraud him. The matter is presently before the court on Schulenberg's motion to quash service and to dismiss the complaint for lack of personal jurisdiction. For the following reasons, the court will grant that motion.

## Factual and Procedural Background

The following facts are taken from the complaint, unless otherwise noted. The court construes all allegations and reasonable inferences in the light most favorable to Tatoian. See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Cntrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).

In October 2012, Tatoian was repeatedly solicited by Edward Glazebrook to make a short-term loan to Glazebrook, Anthony Junge, and Global Financial Solutions, LLC (collectively, the "Borrowers"). Compl. ¶ 14, Dkt. No. 1. Tatoian agreed to loan the Borrowers $325,800.00 (the "funds"). Id. ¶ 15. This loan was memorialized in a promissory note dated December 2, 2012.[1] Id. To fund this loan, Glazebook "directed Mr. Tatoian to wire the funds to the IOLTA account of Defendant [] Schulenberg, Esquire, who was then to wire the funds to the Escrow Account of Attorney William Lee Andrews, III." Id. ¶ 16.

---

[1] The complaint repeatedly references this promissory note and other pertinent documents as being attached as exhibits. No exhibits are attached to the complaint, however.

On December 3, 2012, Tatoian wired the funds to Schulenberg. Id. ¶ 21. According to the complaint, "Schulenberg expressly agreed to wire Mr. Tatoian's monies to the escrow account of Attorney Andrews at Wells Fargo Bank," though the complaint does not say how or with whom Schulenberg so agreed. Id. ¶ 22. On December 17, 2012, "Schulenberg wired…$306,870.00 to [Defendant] Virginia Worldwide [Group, LLC]'s account at Wells Fargo, not [Defendant] Andrews IOLTA account as Borrowers had represented." Id. ¶ 23. Schulenberg later withdrew the remaining $19,870.00 from his IOLTA account "for his personal benefit without Mr. Tatoian's authorization or an express agreement to do so." Id. ¶ 24. Defendant Andrews then allegedly distributed the funds from Schulenberg's transfer to other entities and individuals named as defendants in the complaint. Id. ¶ 25. The complaint asserts that "the entire venture was an elaborate fraudulent conspiracy" involving the Borrowers, Schulenberg, Andrews, and the other defendants, designed to defraud Tatoian and others "by promising high rates of return for short term loans then transferring…funds through a maze of transfers to the conspirators." Id. ¶¶ 28, 37.

Tatoian filed suit on September 9, 2014. He names Schulenberg in six of the eight counts in the complaint: (1) fraudulent transfer under the Connecticut Uniform Fraudulent Transfer Act (Count I); (2) constructive fraudulent transfer under the Connecticut Uniform Fraudulent Transfer Act (Count III); (3) fraudulent transfer under the California Uniform Fraudulent Transfer Act (Count V); (4) unjust enrichment (Count VI); (5) theft under Connecticut law (Count VII); and (6) conspiracy under the California Uniform Fraudulent Transfer Act (Count VIII).

On November 24, 2014, Schulenberg filed a motion to quash service and to dismiss the complaint for lack of personal jurisdiction. See Def.'s Mot. Dismiss, Dkt. No. 19. Schulenberg attaches a declaration to that motion, which provides the following pertinent facts: Schulenberg is a California resident who is licensed to practice law in California. He is not licensed to practice, and

2

does not practice, in Virginia. As part of his law practice, Schulenberg "handles escrows in business transactions for a fee." Id. Ex. 1 ¶ 2. According to Schulenberg, he is "not a party to any of these transactions. [His] role is to receive funds and to disburse those funds in accordance with the written instructions of the party on whose behalf the funds are received." Id. With respect to Tatoian's allegations, Schulenberg states that he was retained by Reliance Investment Group, LLC ("Reliance"), a Nevada corporation, pursuant to the terms of an escrow agreement Id. ¶ 9, Ex. A. Under that agreement, Schulenberg was to receive Tatoian's funds and then disburse those funds in accordance with his client's instructions. Id. ¶ 9. He retained a portion of those funds as payment for his services in accordance with the terms of his agreement with Reliance. Id. Schulenburg maintains that he has "never entered into any agreements (written or oral) with [Tatoian]," and that "although [he] understood that the funds being sent to [his] account were the proceeds of a loan made by [Tatoian] to [Reliance's] capital partner (Global Financing Solutions, LLC), [he] did not represent [Global]" in the transaction or otherwise participate in the negotiation or execution of the loan agreement at issue here. Id. ¶ 11.

Tatoian filed a response to Schulenberg's motion on December 12, 2014. Schulenberg did not file a reply. As neither party has requested a hearing, the court now considers the motion ripe for review on the parties' written submissions alone.

## Discussion

A motion to dismiss under Rule 12(b)(2)[2] of the Federal Rules of Civil Procedure challenges the court's ability to exercise personal jurisdiction over the defendant. "Where, as here,

---

[2] Schulenberg has moved to dismiss the complaint "pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2)." Dkt. No. 19 at 1. He makes no argument with respect to subject matter jurisdiction, however. See Fed. R. Civ. P. 12(b)(1). Moreover, the court is satisfied that it has subject matter jurisdiction here, as the parties are citizens of different states and the plaintiff seeks more than $75,000 in damages. See 28 U.S.C. § 1332. The court therefore confines its discussion to whether Schulenberg is entitled to dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

3

the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009). In deciding whether the plaintiff has made such a showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." Carefirst, 334 F.3d at 396.

A federal district court sitting in diversity "may only exercise personal jurisdiction over [a nonresident defendant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." Consulting Eng'rs, 561 F.3d at 277. The Virginia long-arm statute provides multiple bases for the exercise of personal jurisdiction. See Va. Code § 8.01-328.1. According to the Supreme Court of Virginia, "[i]t is manifest that the purpose of Virginia's long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in [Virginia] to the extent permissible under the due process clause." Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 512 S.E.2d 560, 562 (Va. 1999). Because the long-arm statute extends personal jurisdiction to the outer limits of the due process clause, the court's inquiry is limited to whether it would violate due process to require Schulenberg to appear and defend in this forum. Id.; see also CFA Institute v. Institute of Chartered Financial Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009) ("In other words, if [the defendant's] contacts with…Virginia satisfy due process, then they also satisfy Virginia's long-arm statute.").

Two types of personal jurisdiction satisfy constitutional due process. Both require a nonresident defendant to have "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe v.

4

Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). First, a court may exercise general jurisdiction over a nonresident defendant who has "continuous and systematic" contacts with the forum state. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Second, a court may assert specific jurisdiction based on the nonresident defendant's "conduct connected to the suit." Id. at 711. Because Tatoian argues only that the court has specific jurisdiction over Schulenberg, the court confines its discussion to that analysis. See Pl.'s Br. in Opp. at 3, Dkt. No. 23.

To adequately allege specific jurisdiction, the plaintiff must show that a nonresident defendant "purposefully directed his activities at the residents of the forum and the litigation results from alleged injuries that arise out of those activities." Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations and quotation marks omitted). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation," and requires that "the defendant's suit-related conduct [] create a substantial connection with the forum State." Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014) (internal citation and quotation marks omitted). The Fourth Circuit has established a three-prong test for determining when a court can exercise specific jurisdiction over a nonresident defendant, which requires the court to consider, in order, "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs, 561 F.3d at 278. A court considers the second and third prongs of this test only if each preceding prong is satisfied. Id. at 278-79.

5

The first prong of this test "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." Id. at 278. In evaluating this prong, courts look to various nonexclusive factors, including

> whether the defendant maintains offices or agents in the forum state; whether defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Id. (internal citations omitted). Courts should not, however, mechanically count the defendant's contacts with the forum; instead, they must "[take] into account the qualitative nature of each of the defendant's connections to the forum state." Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012). Indeed, "a single act by a defendant can...satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum." Id. (internal quotation marks omitted); see also ESAB Group Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (stating that "the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way").

The complaint's only factual allegation connecting Schulenberg to Virginia is that he transferred funds, which had been initially transferred by Tatoian (in Connecticut) to Schulenberg (in California), to Defendant Virginia Worldwide Group, LLC (in Virginia). See Compl. ¶ 23. According to the complaint, Defendant Andrews then further dissipated Tatoian's funds from Virginia Worldwide's account as part of the defendants' fraudulent scheme. Tatoian argues that

6

Schulenberg's single transfer of funds into Virginia is sufficient to establish specific jurisdiction in this court over him under the foregoing principles. The court is constrained to disagree.

Schulenberg has produced evidence suggesting that his role in the transaction at issue was simply to "receive the funds which [Tatoian] lent to the 'Borrowers' (as identified in ¶ 2 of his complaint) and [to] disburse[] those funds" in accordance with his client's written directions, as set forth in an escrow agreement between himself and his client. Schulenberg Decl. ¶ 9, Ex. A. He states that he did not solicit the loan from Tatoian, instruct Tatoian to remit the funds to his account, discuss the loan with Tatoian, or enter into any written or oral agreement with Tatoian regarding the funds. Id. ¶ 11. Moreover, Schulenberg did not represent or interact with any individual or entity located in Virginia beyond initiating a single wire transfer to the bank account of a Virginia business entity. Id. Schulenberg also avers that he does not maintain an office in Virginia, does not have employees or a registered agent in Virginia, does not advertise or otherwise solicit business in Virginia, does not own property in Virginia, and does not have any other meaningful connection to the forum.

Tatoian has not provided any evidence countering Schulenberg's characterization of his limited conduct directed toward the Commonwealth. He appears to suggest that Schulenberg may have played an active role in the alleged conspiracy to defraud him, but the complaint fails to allege concrete facts in support of this contention. In opposing Schulenberg's motion, Tatoian also emphasizes that, in his view, Schulenberg failed to adhere to the terms of the escrow agreement. See Pl.'s Br. in Opp. at 4-5. Even if that is true, the court fails to see how Schulenberg's breach of an agreement made with nonresident nonparties has any relevance to whether this court has personal jurisdiction over him with respect to the fraud claims alleged in Tatoian's complaint.

7

Tatoian also argues that initiation of an allegedly fraudulent wire transfer into Virginia, without more, is sufficient to confer specific jurisdiction over a defendant for claims arising from that transfer. See Pl.'s Br. in Opp. at 2-3. Tatoian relies on Roanoke Cement Co. v. Chesapeake Prods., Inc., No. 2:07CV97, 2007 WL 2071731, at *7 (E.D. Va. July 13, 2007), for this proposition. In that case, the plaintiff alleged that it was defrauded by the nonresident defendants, with whom it had entered into an options agreement for the purchase of Virginia real estate. Id. at *3. In furtherance of a scheme to defraud the plaintiff, the defendants allegedly directed the plaintiff to wire the proceeds of the options agreement to the defendants in Alabama. Id. The Roanoke Cement Court found that this fraudulent wire transfer, initiated in Virginia at the defendants' behest, constituted a "tortious injury by an act or omission in [Virginia]," providing the court with personal jurisdiction over the out-of-state defendants. Id. at *7.

The present case is distinguishable from Roanoke Cement in several key respects. Most importantly, Schulenberg initiated the allegedly fraudulent wire transfer in California, not Virginia. See Compl. ¶ 23; Def.'s Mot. Dismiss Ex. A. Moreover, the Roanoke Cement defendants had other connections to the Commonwealth: they had traveled to Virginia, served as directors of a defunct Virginia company, sent communications to Virginia, negotiated a real estate transaction involving Virginia property, and allegedly defrauded a Virginia company. See Roanoke Cement Co., 2007 WL 2071731, at *5-9. Schulenberg, on the other hand, lacks any connection to Virginia beyond a single wire transfer. The parties have not cited, and the court has not found, any Virginia or Fourth Circuit case law addressing a factual scenario substantially similar to that presented here. The court believes, however, that Schulenberg's initiation, in California, of one wire transfer to Virginia is insufficient to show that he purposefully availed himself of the privilege of conducting activities in the Commonwealth. Because the court concludes that Schulenberg has not done so, it need not

8

consider whether Tatoian's claims arise out of Schulenberg's single action directed toward the Commonwealth or whether exercising personal jurisdiction over him would be "constitutionally reasonable." See Consulting Eng'rs, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). Tatoian has not established a prima facie case of this court's personal jurisdiction over Schulenburg.

## Conclusion

For the reasons stated, the court will grant Schulenberg's motion. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 28th day of April, 2015.

_____
Chief United States District Judge

9

Case 7:14-cv-00484-GEC   Document 31   Filed 04/28/15   Page 9 of 9   Pageid#: 156